Filed 3/14/16  P. v. Vega CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>ANTHONY DAMON VEGA,<br><br>      Defendant and Appellant. | B262911<br><br>(Los Angeles County<br>Super. Ct. No. PA077074) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryne Ann Stoltz and Daniel B. Feldstern, Judges.  Affirmed.

Anthony Damon Vega, in pro. per. and Daniel B. Feldstern, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Following a confrontation with four police officers, Anthony Damon Vega was charged with several felony and misdemeanor counts of assaulting and resisting a police officer. Representing himself, Vega filed a motion to suppress statements and observations of the police officers, as well as his own statements, made after he was asked to step out of his parked car, which he argued was an illegal detention. The motion, heard concurrently with Vega's preliminary hearing, was denied. Vega was subsequently convicted by a jury on three felony counts and one misdemeanor count based on the incident. In a bifurcated trial the jury found true special allegations Vega had suffered a prior strike conviction and had served a prior prison term for a felony. Vega was sentenced to an aggregate state prison term of 16 years eight months. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Suppression Hearing*

On the night of May 27, 2013 an individual reported to police that a suspicious male was knocking on the front door of a neighboring house, known to law enforcement as a site of gang activity. San Fernando Police Officers Jorge Bayardo and Michael Delgado responded to the call. When they arrived, the house was dark. No one was on the front porch or in the front yard.

Officer Delgado testified, when he approached the house, he heard a noise and noticed Vega sitting in the front passenger seat of a car parked on the street in front of the house. Delgado asked Vega if he lived in the house. Vega, who appeared agitated, said, "What the fuck do you care?" Delgado told Vega to relax, explained that he and Officer Bayardo were responding to a call and again asked if Vega lived at the house. Vega cursed the officer. Delgado then asked Vega to step out of the car, and Vega complied.

Once out of the car, Vega, a large man, advanced toward Officer Delgado, who backed away because Vega's hands were concealed inside his sweatshirt. Delgado told Vega three times to remove his hands from inside his sweatshirt. Vega ignored the command and continued to curse the officer. Delgado radioed for assistance and used his pepper spray to attempt to control Vega. Vega displayed his hands and walked to the

2

front yard fence, where Delgado ordered him to kneel on the ground. Vega refused. At that point Sergeant Saul Garibay and Officer Armando Patino arrived.

Sergeant Garibay identified himself to Vega and said he had a Taser, which he would use unless Vega complied with his instructions. Vega started to comply with Garibay's command to kneel on the ground, but suddenly stopped and lunged at the sergeant. Garibay fired his Taser at Vega. Vega fell to the ground. He then pulled the Taser darts from his chest, stood and began throwing punches at the officers. Vega fought with the four officers, kicking and hitting each of them before being subdued and handcuffed. Sergeant Garibay and Officers Patino and Bayardo were all injured in the melee.

Officer Bayardo testified that Vega had assumed a fighting stance when he got out of the car. Bayardo, who had known Vega since junior high school, recognized him at this point and repeatedly called to him and shined his flashlight in an attempt to get his attention. Vega closed his hands into fists, looked back and forth at each officer as he cursed them and demanded that they leave. According to Bayardo, Vega continued his verbal abuse of the officers and remained defiant after he walked to the fence.

Vega testified at the suppression/preliminary hearing that he was sitting in his uncle's car outside the house when Officers Bayardo and Delgado arrived. Vega left the car before the officers saw him. As Vega was walking toward his house, the officers approached, told him that they had received a call and asked if Vega had heard any type of disturbance. Vega said neither he nor his uncle had seen or heard anything. The officers thanked him.

When Vega again turned toward his house, the officers asked if Vega was on probation or parole. Vega answered, "No." Officer Delgado then cursed Vega and ordered him to place his hands behind his back. When Vega resisted, Delgado used his pepper spray. Vega became angry, cursed the officers, raised his hands in the air and walked toward the fence. The officers began hitting Vega from behind. Vega fell to the ground, and one of the officers deployed his Taser. Vega lost consciousness for a time.

3

He next remembered lying on the ground, his chest hurting from the weight of the officers on top of him.

At the conclusion of the hearing, Vega argued his motion to suppress the police officers' statements and observations and his own statements to them should be granted because his detention was not supported by reasonable suspicion. In denying the motion, the trial court, acting in the limited role of magistrate, concluded the officers were credible and Vega was not. The court determined the officers had a right under the circumstances to approach the car and speak to Vega about the report of suspicious activity. Furthermore, no detention occurred until Officer Delgado had Vega step out of the car for officer safety in response to Vega's hostile and aggressive behavior. The court found Vega's immediate and escalating combativeness outside the car justified the officers' use of force to restrain and then to arrest him. After denying the suppression motion, the court dismissed one count of battery on a police officer (Officer Delgado) with injury and held Vega to answer on the remaining charges, in effect rejecting Vega's claim he had acted lawfully in self-defense when he reacted to the police officers' attack.

2. *The Information and Pretrial Proceedings*

On August 19, 2014 Vega was charged in an information with two counts of aggravated assault on a police officer (Officers Patino and Bayardo) (Pen. Code, § 245, subd. (c)),[1] with special allegations Vega had personally inflicted great bodily injury on the officers (§ 12022.7, subd. (a)), battery with injury on a police officer (Sergeant Garibay) (§ 243, subd. (c)(2)), resisting an executive officer (all four officers) (§ 69), and misdemeanor battery on a peace officer (Officer Delgado) (§ 243, subd. (b)). The information also specially alleged as to the four felony counts that Vega had previously suffered one prior serious or violent felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(j), 1170.12) and had served one separate prison term for a felony (§ 667.5, subd. (b)). Representing himself at his arraignment, Vega pleaded not guilty and denied the special allegations.

---

1    Statutory references are to this code.

4

On September 10, 2014 Vega filed a second motion to suppress, which the trial court heard and denied on September 25, 2014. The court also terminated Vega's self-representation after finding he had deliberately engaged in serious and obstructionist misconduct that threatened to subvert the proceedings. The court appointed the public defender to represent Vega.

On January 21, 2015 the People filed an amended information in which the date of the alleged prior strike conviction for robbery was changed. Vega pleaded not guilty and denied the special allegations.

3. *The Jury Trial and Verdict*

Jury trial commenced on January 22, 2015. Vega's defense at trial was that he acted in lawful self-defense against the officers' use of excessive force. Vega's and the officers' testimony at trial was similar to their testimony at the suppression/preliminary hearing.

During closing argument, after remarking that Vega was larger in physical stature than the officers, Vega's attorney argued, "Now, I can't help but have this image of the Incredible Hulk, and these guys are over-reacting just because he's big. Remember the Hulk, he never gets big and scary until you do something wrong. Kind of like my client. He wasn't the aggressor. He wasn't looking for a fight. He didn't need to fight two and four cops. They came to him. . . ."

In rebuttal the prosecutor argued, "And it's possible that the defendant on that night was acting like the Hulk. He got angry, he was ripping Tasers out of his chest, getting up, swing at the officers—actually, you know what, that's a bad example because that's also reasonable, too. But one thing about the Hulk that you need to understand is that the Hulk didn't get big just when he was wronged, he got big when he was angry. And that night the defendant no doubt was angry. . . ."

On January 28, 2015 a jury convicted Vega of both counts of aggravated assault on a police officer with true findings on the personal injury enhancement allegations. The jury also found Vega guilty of resisting an executive officer and misdemeanor battery on a peace officer. The jury acquitted Vega of battery with injury on a police

5

officer.  In a bifurcated trial the jury found true the prior strike and prior prison term allegations.

4. *The Sentencing Hearing*

On March 18, 2015, after denying Vega's motion to dismiss the prior strike conviction under section 1385 and *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529-530, the trial court sentenced Vega to an aggregate state prison term of 16 years eight months:  Eight years (the middle term of four years doubled under the three strikes law) for one count of aggravated assault on a police officer, plus three years for the great bodily injury enhancement; a consecutive term of two years eight months (one-third the middle term doubled) for the second count of aggravated assault on a police officer, plus one year (one-third the middle term) for the great bodily injury enhancement; plus a consecutive term of one year for misdemeanor battery on a peace officer; plus one year for the prior prison term enhancement.  The court imposed and stayed the sentence for resisting an executive officer.

**DISCUSSION**

Vega filed a timely notice of appeal, and we appointed counsel to represent him on appeal.  After examination of the record, counsel filed an opening brief in which no issues were raised.  On October 23**,** 2015 we advised Vega he had 30 days within which to submit any contentions or issues he wished us to consider.  After granting Vega one extension of time, Vega filed hand-printed supplemental briefs on November 18, 2015 and December 2, 2015.  In the first brief Vega claimed his appellate counsel provided ineffective assistance by submitting a brief in which no issues were raised pursuant to *People v. Kelly* (2006) 40 Cal.4th 106 and *People v. Wende* (1979) 25 Cal.3d 436.  In his second supplemental brief Vega argued the trial court erred in denying his suppression motion, his trial counsel provided ineffective assistance and the prosecutor committed prejudicial misconduct during trial.

1. *The Trial Court Properly Denied Vega's Motion To Suppress*

Vega argues on appeal, as he did at the suppression hearing, the officers unlawfully detained him because there was no evidence he was involved in unlawful

6

activity. After reviewing the transcript of the hearing and utilizing the appropriate deferential standard of review, we conclude the court properly denied the suppression motion. (*People v Tully* (2012) 54 Cal.4th 952, 979 ["'[i]n reviewing a suppression ruling, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found"'"; "'[a]s the finder of fact . . . the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally reasonable'"].)

The officers had the right to approach the parked car. Once there Officer Delgado and Vega initially engaged in a consensual encounter. Delgado's conversation with Vega was nonaccusatory; the officer reassured Vega he was merely seeking information about the call to which the officers were responding. (See *United States v. Drayton* (2002) 536 U.S. 194, 201-202 [122 S.Ct. 2105, 153 L.Ed.2d 242].) Vega was still not detained when he was asked by Delgado to step out of the car. A mere request, as opposed to a command dictating a person's conduct, does not constitute a Fourth Amendment restraint. Delgado's request was unaccompanied by threats or physical force. Indeed, Delgado did not conduct a pat search or attempt to physically restrain Vega until Vega charged him. In short, Vega's interaction with Delgado prior to attacking the officers was entirely consensual.[2]

2. *Vega's Attorney Did Not Provide Ineffective Assistance*

Vega claims his attorney provided ineffective assistance by characterizing him as "the Hulk." The comment was intended to illustrate with a familiar analogy the defense theory that Vega, although a large man, had merely defended himself against overzealous police officers. By conceding that Vega's size and apparent strength made him capable of inflicting harm when unjustifiably attacked, Vega's attorney made a reasonable tactical

---

2  Even if Vega's detention had been unlawful, it is difficult to understand why that would justify suppression of the officers' observations about the confrontation that ensued between them and Vega.

choice given the state of the evidence. (See *People v. Gamache* (2010) 48 Cal.4th 347, 392-393.)

   3. *Vega Has Forfeited His Claim of Prosecutorial Misconduct; His Argument*
      *Also Has No Merit*

Vega contends the prosecutor committed misconduct by comparing him to the Hulk during rebuttal argument. Such comments, Vega argues, inflamed the jury and were prejudicial.

No objection was made to any of the comments Vega now identifies. Accordingly, he has forfeited his prosecutorial misconduct argument on appeal. (See *People v. Dykes* (2009) 46 Cal.4th 731, 766; *People v. Prince* (2007) 40 Cal.4th 1179, 1275.) Vega's claim is also without merit. The prosecutor's remarks were a fair response to the defense argument, reasonably based on the evidence and not calculated to incite the emotions of the jury. (*People v. Pearson* (2013) 56 Cal.4th 393, 431-432.)

We have examined the entire record and are satisfied Vega's appellate attorney has fully complied with the responsibilities of counsel and no arguable issue exists. (*Smith v. Robbins* (2000) 528 U.S. 259, 277-284 [120 S.Ct. 746, 145 L.Ed.2d 756]; *People. Kelly, supra,* 40 Cal.4th at pp. 118-119; *People v. Wende*, *supra,* 25 Cal.3d at pp. 441-442.)

**DISPOSITION**

The judgment is affirmed.

                                        PERLUSS, P. J.

We concur:

      ZELON, J.                    BLUMENFELD, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8